# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 50103 | **DATE** | 12/2/2011 |
| **CASE TITLE** | Seaga Int'l, Ltd., et al. v. Austway Vending Invs. PTY Ltd. et al. | | |

**DOCKET ENTRY TEXT:**

Plaintiffs' motion for a default judgment [29] as to defendants Austway and Sandgren is granted. Plaintiffs have established that this court has personal jurisdiction over defendant Phillips, and therefore he is not dismissed from this case. Plaintiffs shall notice this before the Magistrate Judge to prove the amount of damages.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

Plaintiffs, Seaga International, Ltd. ("International") and Seaga Manufacturing, Inc. ("Manufacturing"), filed a complaint against defendants, Austway Vending Investments PTY Ltd. ("Austway"), Mark Sandgren, and Andrew Phillips, alleging that defendants owe them damages under a contract for the sale of vending machines and parts. Now before the court is plaintiffs' motion for default judgment as to defendants Austway and Sandgren. Also before the court are the parties' supplemental briefs on whether this court has personal jurisdiction over Phillips. For the following reasons, the court grants plaintiffs' motion for default judgment and finds that it has personal jurisdiction over Phillips.

### I. BACKGROUND

Plaintiffs filed their complaint in the Circuit Court for the Fifteenth Judicial Circuit, Stephenson County, Illinois. According to the complaint, since on or after December 31, 2004, Austway ordered vending machines and parts from plaintiffs on several occasions pursuant to a Distributor Agreement. Plaintiffs delivered the merchandise, and now assert that there is a balance due of $379,616.28 for purchases, in addition to interest and fees of $445,406.14, pursuant to an agreement between the parties, for a total of $825,022.14. Plaintiffs further assert that on or about July 8, 2004, Sandgren and Phillips unconditionally guaranteed the obligations of Austway in order to induce plaintiffs to extend credit to Austway. Plaintiffs have requested payment from Sandgren and Phillips under the guarantee, which they have refused to provide.

The case was removed to this court based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2). International is a Caymen Islands corporation with an office in Freeport, Illinois. Manufacturing is an Illinois corporation with a principal place of business in Freeport, Illinois. Austway is an Australian corporation with a principal place of business in Australia. Sandgren and Phillips are individual citizens of the Commonwealth of Australia who reside in Australia.

Phillips filed an initial motion to quash service pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), (4), and (5), arguing that he was served through "informal means" and that plaintiffs failed to provide evidence

| STATEMENT |
|---|

of proper service. The court denied Phillips' initial motion to quash based on improper venue because it contained insufficient argument and citation to pertinent authority to adequately raise the issue. Phillips filed a renewed motion to quash. The court granted Phillips' renewed motion in part and denied it in part, granting plaintiffs an opportunity to submit a brief and further evidence of Phillips' contacts with Illinois and ordering that if plaintiffs failed to do so, their claims against Phillips would be dismissed for lack of personal jurisdiction. Plaintiffs filed a supplemental brief, and Phillips filed a reply.

Plaintiffs also filed a motion for default judgment as to Austway and Sandgren, arguing that they were duly served with a copy of the verified complaint and summons on March, 31, 2010 and May 25, 2010, respectively, and failed to answer, plead, or otherwise defend the allegations of the complaint.

## II. DISCUSSION

### A. Plaintiffs' Motion for Default Judgment

Plaintiffs ask the court to enter a default judgment against Sandgren and Austway, claiming that both were duly served with a copy of the verified complaint and summons, and failed to answer, plead, or otherwise defend the allegations of the complaint. A district court possesses broad discretion under Rule 55(b)(2) to enter a default judgment. Fed. R. Civ. P. 55(b)(2); O'Brien v. R.J. O'Brien & Assoc., Inc., 998 F.2d 1394, 1398 (7th Cir. 1993). As one treatise states:

> In determining whether to enter a default judgment, the court is free to consider a number of factors that may appear from the record before it. Among these are the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; and whether the grounds for default are clearly established or are in doubt. Furthermore, the court may consider how harsh an effect a default judgment might have; or whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant. Plaintiff's actions also may be relevant; if plaintiff has engaged in a course of delay or has sought numerous continuances, the court may determine that a default judgment would not be appropriate. Finally, the court may consider whether it later would be obliged to set aside the default on defendant's motion, since it would be meaningless to enter the judgment as a matter of course if that decision meant that the court immediately would be required to take up the question of whether it should be set aside.

10A Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure § 2685 (3d ed. 1998) (footnotes omitted).

The court concludes that an entry of a default judgment against Austway and Sandgren is appropriate. Affidavits of service filed by plaintiffs show that Austway was personally served on March 31, 2010, and Sandgren on March 25, 2010. Plaintiffs' motion for entry of a default judgment was not filed until May 27, 2011, over a year later, giving defendants more than ample time to file their answer or otherwise defend their interests in this case. It appears to the court that plaintiffs have been substantially prejudiced by the delay, as a delay of over one year is a substantial amount of time for the case to languish without resolution. No attorney has entered an appearance on behalf of Austway or Sandgren. Defendants have not shown that the default was caused by good-faith mistake or excusable neglect. While they have filed letters with the court asking for guidance in how to proceed to defend their interests, which under other circumstances could be an indication of good-faith mistake or excusable neglect, defendants did so only on June 29, 2011, over a year after they were served and the complaint was filed. Defendants do not claim that they believed letters sent to plaintiffs' counsel constituted an answer for purposes of the Federal Rules of Civil Procedures, nor will the court construe them as such. Finally, defendants have not challenged service or personal jurisdiction other than in those letters, the contents of which the court will not consider because they do not constitute answers pursuant to the Federal Rules of Civil

Procedure. While the amount in controversy is significant, this factor alone is not so weighty as to require the court to deny plaintiffs' motion.

### B. Personal Jurisdiction over Phillips

In diversity cases such as this one, a federal court has personal jurisdiction over a defendant only if a court of the state in which it sits would have such jurisdiction. RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275 (7th Cir. 1997). The Illinois long-arm statute "permits its courts to exercise [personal] jurisdiction on any basis permitted by the Illinois and United States Constitutions." Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 714 (7th Cir. 2002) (quotation marks omitted); see also 735 ILCS 5/2-209(c). "[I]n almost all cases, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns regarding personal jurisdiction." Keller v. Henderson, 359 Ill. App. 3d 605, 620 (2005). Because neither case law nor the parties have indicated that the analyses diverge in this case, the court proceeds to the federal analysis. See Hyatt Int'l, 302 F.3d at 715-16; Keller, 359 Ill. App. 3d at 620.

Specific jurisdiction is at issue in this case. "Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." RAR, Inc., 107 F.3d at 1277 (quotation marks omitted). Under specific jurisdiction, a court may exercise personal jurisdiction over a nonresident defendant in cases where the defendant "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citations and quotation marks omitted). The federal test for assertions of personal jurisdiction "requires that the defendant must have minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Hyatt Int'l, 302 F.3d at 716 (quotation marks omitted). "[D]ue process generally requires that each defendant's contacts with the forum state be assessed individually." Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 784 (7th Cir. 2003).

In contract cases, "an out-of-state party's contract with an in-state party is not enough alone to establish the requisite minimum contacts." Id. at 785 (quotation marks omitted). However, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing may indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." Id. (quotation marks omitted). Accordingly, in reviewing a contractual relationship, courts look to a number of factors in deciding whether to exercise specific personal jurisdiction over a nonresident defendant, including (1) who initiated the transaction; (2) where the negotiations were conducted; (3) where the parties executed the contract; and (4) where the defendant would have performed the contract. Corus Int'l Trading Ltd. v. Eregli Demir ve Celik Fabrikalari, T.A.S., 765 F. Supp. 2d 1079, 1085 (N.D. Ill. 2011). In addition, courts will consider the presence of a forum selection clause in the contract as conferring personal jurisdiction. IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc., 437 F.3d 606, 609-10 (7th Cir. 2006). The burden is on the plaintiff to demonstrate the existence of personal jurisdiction. Purdue, 338 F.3d at 782.

Here, plaintiffs contend that Phillips sought out plaintiffs' business in Illinois, and they submit the affidavit of Steven V. Chesney, president of International, in support of this allegation. Plaintiffs assert that Phillips inspected plaintiffs' Freeport facilities prior to entering into the business relationship and returned after execution of the Distributor Agreement to inspect production. Plaintiffs claim that Phillips "took the lead" in negotiating the terms of the Distributor Agreement in Freeport, including the design for the machines, pricing for the Distributor Agreement, and the guarantee. Phillips made many subsequent trips to Freeport in furtherance of his business relationship with plaintiffs, which often lasted up to a week at a time. The purposes of these visits included negotiating pricing, reviewing and discussing terms, discussing the potential for new and upgraded products, and inspecting the production of vending machines.

In his reply, Phillips claims that plaintiffs have failed to make a prima facie showing that Phillips is

| STATEMENT |
|---|

subject to specific jurisdiction in Illinois because the Chesney affidavit does not set out facts that would be admissible in evidence pursuant to Federal Rule of Civil Procedure 56(c)(4). Specifically, Phillips argues that the affidavit does not list specific dates of Phillips' alleged visits, nor does it establish how Chesney has first-hand knowledge of the information contained in the affidavit.

Here, Phillips' argument that the court lacks personal jurisdiction over him is properly considered by the court as a motion to dismiss pursuant to Rule 12(b)(2). "Several courts have suggested that affidavits submitted in response to a motion to dismiss under Rule 12(b)(2) must be based on personal knowledge or comply with Rule 56." Contrak, Inc. v. Paramounter Enterprises Int'l Inc., 201 F. Supp. 2d 846, 850 (N.D. Ill. 2002). See also Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1215 (11th Cir. 1999) (holding that only portions of affidavit setting forth specific facts within affiant's personal knowledge would be considered on motion to dismiss for lack of personal jurisdiction); FDIC v. Oaklawn Apts., 959 F.2d 170, 175 & n.6 (10th Cir. 1992) (holding that Rule 56 requirements of personal knowledge, competency and admissible facts apply to affidavits submitted in support of or in opposition to motions to dismiss on jurisdictional grounds); United Phosphorous, Ltd. v. Angus Chem. Co., No. 94 C 2078, 1996 WL 14036, at *1 (N.D. Ill. Jan. 11, 1996) (suggesting that Rule 56 procedures for evidence apply in the context of Rule 12(b)(2) motion). The Seventh Circuit, however, has not addressed this issue. Nevertheless, the court need not resolve this question, because Chesney's affidavit complies with the requirements of Rule 56.

The Chesney affidavit states that Chesney has personal knowledge of the information contained therein, and that Phillips made several trips to Illinois both before and after execution of the Distributor Agreement. Phillips cites no authority for his contentions that the affidavit must (1) make any more specific statement of how Chesney came to possess personal knowledge of such information; (2) name the exact dates that Phillips was in Illinois; or (3) specify how Chesney concluded that the Distributor Agreement was negotiated and finalized in Illinois. There is, therefore, no indication before the court that the information contained in the Chesney affidavit would be inadmissible at trial.

Having found that the Chesney affidavit is adequate for Rule 56 purposes, the court turns its inquiry to whether the facts set forth in the affidavit make a prima facie showing that the court has personal jurisdiction over Phillips. Applying the four-factor inquiry for specific jurisdiction in contract cases as stated above, the court finds that Phillips is subject to specific jurisdiction in Illinois. The Chesney affidavit shows that the parties negotiated the Distributor Agreement in Illinois, and plaintiff has not presented any evidence to the contrary. Phillips' performance on the Distributor Agreement would involve sending payment to plaintiffs in Illinois. The Chesney affidavit does not specify where the Distributor Agreement was executed, but states that Phillips sought out plaintiffs to manufacture vending machines for Austway. The court finds that by initiating contact with plaintiffs, traveling to Illinois several times before and after execution of the Distributor Agreement, and negotiating the terms of the Distributor Agreement in Illinois, Phillips purposefully availed himself of the protection of the laws of the State of Illinois such that he could reasonably anticipate being haled into court in Illinois. Plaintiffs have therefore established this court's specific personal jurisdiction over Phillips.

### III. CONCLUSION

For the foregoing reasons, plaintiffs' motion for a default judgment as to Austway and Sandgren is granted. As this court has personal jurisdiction over Phillips, he is not dismissed from the case. Plaintiffs shall notice this before the Magistrate Judge to prove the amount of damages.